# **Exhibit 3**

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

Elspeth Shipping Corporation

<u>Claimants</u>
<u>(Owners)</u>

-and-

Humpuss Sea Transport Pte Ltd

<u>Respondents</u>
<u>(Charterers)</u>

<u>m.t. Empire Pajajaran</u>

<u>Charterparty 29th January 2008</u>

---

FIRST FINAL AWARD

---

WHEREAS :-

1.   By a charterparty dated 29th January 2008 on an amended SHELLTIME 4 form with additional clauses and later Addenda the Claimants ("Owners") chartered the motor tanker Empire Pajajaran ("the vessel") to the Respondents ("Charterers") for a period of 60 months plus or minus 15 days in Charterers' option on terms more particularly set out therein.

2.   The said charterparty further provided, by Clauses 46(a) and (b), for any disputes between the parties to be referred to arbitration in London in the manner therein

specified with English law to apply.  Disputes having arisen, further details of which appear below and in the Reasons attached to and forming part of this our First Final Award, the Owners appointed the undersigned Michael Baker-Harber now of 16 Eaton Mews South, London, SW1W 9HP to act as arbitrator and Charterers appointed the undersigned Dr Colin Ong of Suites 2-2 to 2-8, Gadong Properties Centre, KM 3-5, Jalan Gadon, Bandar Seri Begawan BE4119, Negara Brunei Darssalam as arbitrator.  We in turn appointed the undersigned The Right Honourable Sir Anthony Evans of Essex Court Chambers, Lincoln's Inn Fields, London, WC2A 3EG to be the third arbitrator, thus completing the tribunal.  The seat of this arbitration is London, England.

3.    In the reference before us Owners claimed:-

(a) Outstanding hire in the sum of US$2,038,888.03

(b) Expenses totalling US$582,236.74

(c) Damages flowing from Charterers' (alleged) repudiatory breach of contract US$17,587,114

(d) Interest and costs

Charterers denied that Owners were entitled to bring these proceedings, denied liability generally and asserted that Owners were themselves in repudiatory breach of the charterparty, which breach they accepted thereby bringing the contract to an end.

4.    Owners made an application for an interim award for hire (see 3(a) above).  Written submissions were served with supporting materials and we heard the parties, both represented by counsel, at an oral hearing on 27th April 2010.

Λ    NOW WE the said Michael Baker-Harber, Colin Ong and The Right Honourable Sir Anthony Evans, having taken upon ourselves the burden of this reference, having

2

carefully and conscientiously considered the evidence and submissions before us, having conferred with one another and being agreed DO HEREBY MAKE ISSUE AND PUBLISH this our FIRST FINAL AWARD namely:-

B   WE FIND AND HOLD that the Owners' claim for hire SUCCEEDS in the sum of US$2,038,888.03

C   Accordingly WE AWARD AND ADJUDGE that Charterers shall forthwith PAY to Owners the said sum of US$2,038,888.03 (Two Million Thirty-Eight Thousand Eight Hundred and Eighty-Eight United States Dollars and three cents) together with interest calculated at the rate of 4.25 per cent per annum compounded with three monthly rests running from 16th November 2009 until the date payment is made.

D   WE FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs, (to be assessed by us if not agreed, for which purpose we reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment.   Additionally the Charterers shall pay the tribunal's costs of this Award provided always that if the Owners shall in the first instance have paid all or any part of our said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E   Our Award is FINAL as to all matters herein determined but we expressly RESERVE unto ourselves jurisdiction to deal with all outstanding matters in the reference.

Dated this 26ᵗʰ day of October 2010

.......................................
**Mr. Michael Baker-Haber**
Co-Arbitrator

.......................................
**Dr. Colin Yee Cheng Ong**
Co-Arbitrator

.......................................
**Sir Anthony Evans**
Chairman

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N</u>:-

Elspeth Shipping Corporation

<u>Claimants</u><br/><u>(Owners)</u>

-and-

Humpuss Sea Transport Pte Ltd

<u>Respondents</u><br/><u>(Charterers)</u>

<u>m.t. Empire Pajajaran</u>

<u>Charterparty 29th January 2008</u>

---

**REASONS**

---

**WHEREAS :-**

1. By its First Final Award dated 26 October 2010 the Tribunal consisting of –

Sir Anthony Evans (Chairman)

Michael Baker Harber Esq. (appointed by Claimant)

Dr. Colin Ong (appointed by Respondent)

1

has Ordered (in summary) that Owners` claim for hire succeeds in the sum of US$2,038,888.03 together with interest at 4.25% p.a. as stated therein and Costs.

2. The Tribunal now gives its Reasons for the said Award, as follows.

**Parties**

3. Claimants (Elspeth Shipping Corporation, hereinafter "Claimants" or "Elspeth") are and at all material times have been Owners of the vessel EMPIRE PAJAJARAN (hereinafter "the vessel") a tanker of 17000 mt DWT constructed by Samho Shipbuilding Co.Ltd. of South Korea as Hull No. SH1096.

4. Respondents (Humpuss Sea Transport Pte., hereinafter "Respondent" or "Respondents" or "Humpuss") as charterers entered into a time charterparty dated Singapore 29 January 2008 with Falda Maritime Inc. (hereinafter "Falda") as Owners of a vessel described as follows –

> " Hull No. JMS 602, Jin Mao Shipyard, China, name of vessel to be advised, owners option to replace with Samho SH 1096 as per recap......".

**The charterparty**

5. Additional Clause 26 of the charterparty provided as follows –

> "Owners Option
>
> To replace the above JMS with the following Samho vessels, to be declared before April 30th, 2008.
>
> 1.  Samho SH 1096
>
> Owners : Elspeth Shipping Corporation of Monrovia, Liberia".

6. The charterparty was on Shelltime 4 form and was for a period of 60 months plus or minus 15 days (clause 4) from delivery.

7. By clause 46, the charterparty was governed by English law and disputes were agreed to be referred to arbitration in London in accordance with the Arbitration Act 1996 save as stated therein.

2

8. In clause 8 of the charterparty the hire rate was stated to be US$16,600 daily and *pro rata* for any part of a day. Clause 26 (above), however, specified a daily rate of US$16,700 for the substitute vessels.

9. Clause 9 of the charterparty ("Payment of Hire") provided in part that "in default of......proper and timely payment:

     (a)........................

     (b) interest on any amount due but not paid on the due date shall accrue from the day after that date up to and including the date when payment is made, at a rate per annum which shall be 1% above the U.S. Prime Interest Rate as published by the Chase Manhatten Bank in New York at 12.00 New York Time on the due date, or, if no such interest rate is published on that day, the interest rate published on the next preceding day (sic) on which such a rate was so published, computed on the basis of a 360 day year of twelve 30-day months, compounded semi-annually."

10. (a) Addendum No.2 to the charterparty dated 29th. December 2008 was agreed between the parties to this arbitration, reading as follows -

     "It is hereby mutually agreed between the Owners and the Charterers to name the vessel "Empire Pajajaran" for the duration of the TC period.

All other terms and conditions and exceptions of the above Charter Party, to remain unaltered."

(b) On 9 April 2009 (after the vessel was delivered and after disputes had arisen regarding non-payment and late payment of hire) Addendum No.3 to the charterparty was agreed between the parties to this arbitration, namely, Elspeth and Humpuss, including the following –

     "(1) It is a condition of this charter that all hire shall be paid in time.

(2) It is a condition of clause (3) below that all outstanding monies owed under this Charter Party, which have been withheld by charterers to be paid immediately otherwise this Addendum is null and void.

(3) A new temporary daily rate of hire, as per clause No.8 of the Charterparty will be US Dollars 15,200 daily. This rate will become effective from the 19th of April, 2009, which is the monthly anniversary date of payment of Charter-Hire. This allowance to Charterers shall continue up to and including the 31st of December 2009 per day/pro rata.

Thereafter, the accumulated difference of Charter Hire from the original rate of USD 16,700 to the temporary rate of USD 15,200 i.e. $1,500 daily shall be repaid to Owners by increasing the original Charter-Hire rate over the remaining period left to run under the timecharter by the appropriate amount.

………………………………………………………………

(This will mean ………………Actual exact figures to be calculated. Adjustments if any to be settled with the last Charter-Hire payment(s) at end of the T/C period.)

(4) If Charterers fail to make proper and punctual payments at the new agreed rate, then owners shall have the right to claim extra damages from the Charterers on the following basis:-

The adjusted Charter-Hire rate, as per this addendum shall become null and void, with immediate effect.

Upon this event the rate of Charter-Hire shall be retrospectively adsjusted and payable at the original rate of USD 16,700 daily from the day/time the rate was reduced. The original rate shall continue until Charterers default is rectified. This original rate shall

4

be the appropriate measure and assessment of damages due to the
Owners.

...............................................................

All other terms and conditions and exceptions of above Charter
Party, to remain unaltered."

11. The Charter Party further provided –

"<u>ADDITIONAL CLAUSES</u>

1. Owners Managers – Remi Maritime Corporation, Piraeus,
   Greece

2. Owners London Agents to Managers – Seacrest Shipping Co.
   Ltd. London

3. Owners company and Managers will be fully guaranteed by
   parent company Messrs. Empire Chemical Tankers Holdongs
   Incorporated of Marshall Islands"

**Performance**

**(a) Substitution**

12. On 29 April 2008 Seacrest Shipping Co.Ltd. "(As Agents to
Managers)" informed  Cass Technova, brokers for the Respondent, by
email as follows –

"Re: <u>17000 DWT – IMO II product/ Chemical Tankers – JMS 602</u>
<u>+ JMS 604 O'opt</u>

<u>Samho SH 1096 + SH1099</u>

<u>A/c: Humpuss – C/P dd. 29/1/08</u>

In accordance with terms and conditions of above named Charter
Party, Owners have authorised us to advise Charterers that they
hereby nominate vessels Samho SH1096 + SH1099 to perform
under this Charter Party.

Kindly reconfirm by return message Charterers
acknowledgement."

5

13. On 7 May 2008 by email Cass Technova replied –

"Following confirmation just received from Chrtrs side:

qte

We confirmed on nominate vessels Samho SH 1096 + SH 1099.

Uqte"

**(b) Charterparty**

14. Following the said substitution of JMS 602 by Samho SH 1096, all dealings relating to the Charter Party took place between the Respondent as charterers and Elspeth as owners of the latter vessel, later named "Empire Pajajaran". The owners of JMS 602, Falda Maritime Inc., were no longer involved in correspondence with the parties or in any other way in connection with the charterparty or, so far as the Tribunal is aware, at all.

15. The vessel was delivered to the Respondent pursuant to the Charter Party on 9 January 2009.

16. On 7 January 2009 and subsequently, Elspeth invoiced the Respondents for hire due in respect of 'Empire Pajarajan' and conducted all correspondence relating to the charter party with the Respondents, without protest or objection from the Respondents.

17. Respondents failed to pay hire pursuant to clause 8 and their obligation was amended by Addendum No. 3 as aforesaid, with effect from 19 April 2009.

18. Addendum No.3 like Addenda Nos. 1 and 2 dated 10 November and 29 December 2008 respectively was headed –

"m.t. "Empire Pajajaran"

To the Charter Party dated 29/1/08

Between

Elspeth….(the "Owners")

And

6

Humpuss.......(the "Charterers")."

19. Respondents thereafter (1) failed to pay the amount of hire outstanding at the date of Addendum No.3, namely, 9 April 2009, and (2) failed to pay the agreed reduced rate of hire pursuant to the said Addendum.

**The arbitration**

20. On 6 August 2009 the managers of the North of England P&I Association Ltd. on behalf of Elspeth gave notice of arbitration "in respect of all disputes arising under the charterparty". Thereafter, Mr. Baker Harber was appointed arbitrator by Claimants, and Dr. Colin Ong was appointed arbitrator by Respondents.

21. By letter dated 12 November 2009, the P&I Association set out "Claim Submissions" "in connection with Owners` claim for unpaid hire under the Charterparty". The amount of hire claimed at the original charter rate was US$2,475,964.15 ( but also including bunkers on delivery and additional war risks insurance premium) plus interest pursuant to clause 9(b) of the Charterparty, alternatively under section 49 of the Arbitration Act 1996.

22. The said letter also claimed sums allegedly due in respect of Charterers` expenses under clause 7 of the Charterparty, plus interest thereon.

23. The Claim Submissions also included –

"2. By additional Clause 26 of the Charterparty, there was an option to substitute the intended newbuild with specified vessels, including the vessel Hull No. Samho SH1096 owned by [Elspeth] ("Owners") and later named "EMPIRE PAJAJARAN". This option was exercised on or around 29 April 2008 and confirmed by Charterers by way of email on or around 7 May 2008. Therefore at

7

all material times Owners were the relevant owners under the
Charterparty and the Charterparty concerned the Vessel."

**Termination of the Charterparty**

24. On 16 November 2009 the said P&I Manager on behalf of the
Claimants [Elspeth] informed Respondent that –

"Owners hold Charterers in repudiatory breach of the Charterparty
arising by way of Charterers` cumulative behaviour in failing to
comply with their Charterparty obligations including but not
limited to:

    1. Failing to pay hire;

    2. Failing to arrange for or to pay for vital voyage expenses.

……………………Owners hereby accept Charterers conduct as
being in repudiatory breach thereby terminating the Charterparty
forthwith and with immediate effect."

**The arbitration (cont`d.)**

25. By letter dated 22 January 2010, Asia Legal LLCV on behalf of the
Respondent submitted Defence Submissions which included –

(paras.2 – 6) a denial that any valid or binding charterparty was
entered into; if there was one, the parties were Falda Maritime Inc.
and the Respondent. Additional clause 26, it was contended,
allowed Falda Maritime Inc. "to replace the vessel chartered from
Hull No.JMS 602 to Samho SH 1096 but not to assign or novate
the purported Charterparty to the owners of such replaced [sic]
vessel." The Respondent contended that "in the circumstances
there is no valid and [binding] arbitration agreement between the
Claimants and the Respondents and dispute the jurisdiction of the
Tribunal."

(para.8) an admission that the vessel was physically delivered to
the Respondents on 13 May 2009 (in error for 9 January 2009).

8

(para.9) a denial that the Claimants were "entitled to the sums claimed or any sums whatsoever from the Respondents", and of the claim for interest;

(para. 9(a)) an allegation that by reason of Addendum No.3 the charter hire was reduced "and accordingly, the amount of hire claimed is incorrect"; and

(para. 9(b) and ( c )) a denial that the Respondent was in repudiatory breach of the charterparty, and an allegation that the Respondents "have accepted or alternatively by these submissions accept" the Charterers' notice [dated 12 November 2009] as itself being a repudiatory breach; and

(para.9(d)) an allegation that the vessel was off-hire for an unspecified period in October/November 2009.

26. On 30 January 2010 the Tribunal was completed by the appointment of Sir Anthony Evans as chairman.

**Commercial Court proceedings**

27. Meanwhile, Claimants (and others) obtained injunctive relief in the Commercial Court against the Respondent (and another) on 17 December 2009 (ex parte Order made by Gross J.). This was upheld by Christopher Clarke J. on 19 February 2010 after *inter partes* hearings.

28. The Commercial Court proceedings are not relevant to these Reasons save as part of the narrative history of the dispute, and save that documentary evidence placed before the Commercial Court was produced before the Tribunal, as stated below.

**The arbitration (cont'd.)**

29. A hearing took place before the Tribunal on 26 February 2010. Counsel for the Respondents confirmed that the previous challenge to the jurisdiction of the Tribunal and the allegation that the charterparties were

9

void both were withdrawn. The Tribunal's Order for Directions (No.1) made after the hearing therefore recorded that –

> "(b) the Respondent sought leave to amend the Defence Submissions specifically in order to (1) withdraw paragraphs 2 and 3 and 5 and 6 of the respective Submissions dated 22 January 2010, which allege that the charterparties are void and/or unenforceable by reason of unlawfulness, illegality, fraud and/or collusion, and (2) withdraw the allegations in paragraphs 3 and 4 of the Submissions which challenged the jurisdiction of the Tribunal in relation to claims in respect of *Empire Pajajaran* and *Empire Tulang Bawang* (all as set out in the letter from AsiaLegal LLC to the Tribunal dated 12 February 2010), as well as to respond to the Amended Claim Submissions."

30. In order to clarify the issues raised in the arbitration, the Tribunal directed the parties to serve amended pleadings by dates which were agreed and/or stated orally at the hearing.

31. The Tribunal further directed that the Claimants' Application for an interim/partial Award in respect of the claim for hire would be heard on 27th April 2010.

32. Pursuant to the Directions given, the Claimants served Amended Points of Claim dated 8 March 2010 and the Respondents served Amended Points of Defence dated 24 March 2010. The Claimants served Amended Points of Reply dated 31 March 2010.

33. The Amended Points of Claim included a claim for "Unpaid Hire from 10[th] January 2009 to 13[th] November 2009: US$2,038,888.03" plus interest "pursuant to clause 9(b) of the Charterparty" amounting to US$55,212.73 as at 8 March 2010" and continuing. There were also claims for Charterers' expenses (paragraph 15.2) and for damages caused by Respondents' alleged repudiation of the charter (paragraphs 20-21).

10

34. The Amended Points of Defence (described as "Amended by substitution") did not admit that Hull No. Samho SH1096 "is owned by the Claimant" and denied that the option given by Clause 26 of the Charterparty was validly exercised by 30 April 2008 or at all (paragraph 3 sub-paras.(2)-(4)). It further alleged-

> "(5)......the effect of the exercise of any option was not to assign or novate the Charterparty to the Claimant. Therefore, the Owners under the Charterparty have at all material times been, and remain, Falda Maritime Inc. which is the only party with any contractual rights against the Respondent under the Charterparty").

35. The Amended Points of Defence further admitted that the sums claimed had not been paid to the Claimants (para.10) and denied that any sum is due to the Claimants (para.12). The correctness of the Claimants' Hire Reconciliation Statement was "not admitted" (paragraph 13). The off-hire allegation was maintained but not particularised (para.14(2)).In paragraph 14(1) it was alleged that the amount of hire due was reduced to US$15,200 daily by reason of Addendum No.3 dated 9 April 2009.

36. The Amended Points of Defence contained no challenge to the jurisdiction of the Tribunal nor any allegation that the charterparty was void on any ground.

37. A further hearing was held as directed on 27 April 2010. The parties served written Submissions dated 27 April 2010 (Claimants) and 26 April 2010 (Respondents) respectively ("the April Submissions") but as the dates indicate there was no opportunity for the Tribunal or the parties to consider these in advance of the hearing. The Claimants produced a substantial amount of documentary evidence including Affidavits sworn on their behalf in the Commercial Court proceedings (paragraph 27 above) by Marianne Brookes dated 17 December 2009 and 11 January 2010, including Exhibit "MB1" to the First Affidavit which amounted to

11

1349 pages contained in four separate bundles. The Respondents did not object to the Tribunal receiving these documents as evidence in the arbitrations, although the Tribunal has found that almost all of them are irrelevant to this Application for an interim/partial Award.

38. Claimants also produced a Witness Statement of Eleni Theodosiadou dated 26 April 2010. She had prepared the Hire Reconciliation Statements dated 8 March 2010 that were attached to the Amended Points of Claim (paragraph 2). The Witness Statement was otherwise concerned with the claim for disbursements which is no longer relevant for the purposes of this interim/partial Award (see below).

39. At the 27 April hearing, counsel made oral submissions but it was agreed, and directed by the Tribunal, that in the circumstances (including the late delivery of written submissions and evidence, as stated above) the parties should each submit written Closing Submissions by 19 May 2010 together with Applications, if any, to adduce further evidence, by the same date.

40. On 19 May 2010 the parties each served Closing Submissions pursuant to the Directions given above. They also covered the claims in respect of disbursements (charterers' expenses) notwithstanding that the Tribunal directed on 26 February 2010 that the applications for interim/partial Awards were limited to their claims for unpaid Hire. However, it appeared that, due to oversight, the Directions given at the 26 February hearing were not confirmed to the parties in writing until after the 27 April hearing. When the Claimants received them, they accepted that the pending Applications were so limited (Supplemental Submission dated 28 May 2010). Therefore, issues relating to disbursements (charterers' expenses) are no longer relevant to this First Final Award.

41. In Respondents' Outline Submissions dated 19 May 2010 it was contended for the first time that "The Amended Points of Claim include

no statement of truth with regard to the facts therein and the Claimants have served *no* evidence in support of their claims for hire" (paragraph 9).

42. On 19 May 2010 the Respondent's legal representatives applied for permission to adduce in evidence a Witness Statement of Gho Sze Kee of that date. It is concerned with the claim for disbursements, and in view of Claimants' later concession that this application is limited to the claim for unpaid Hire, it is not relevant to this First Final Award.

## ISSUES

### (1) Substitution

43. The first issue raised by the Respondent can be defined as follows – is the Claimant (Elspeth) entitled to enforce the charterparty dated 29 January 2008 against the Respondent?

44. The basic facts are not in dispute. The charterparty was entered into by Falda as Owner of Hull No. JMS 602, a new building at the Jin Mao Shipyard in China. The charter terms included an express option "to replace [the vessel] with Samho SH1096 as per recap", this referring to clause 26 which described the Samho vessel as follows –

"1. Samho SH1096

Owners: Elspeth Shipping Corporation....."

Seacrest gave notice of the exercise of this option by their email dated 29 April 2008 (paragraph 12 above).

45. Thereafter, Samho No.1096 renamed Empire Palajaran was delivered by Elspeth as Owners to the Respondent as Charterers, in their own names and as evidenced by the Protocol of Delivery and Acceptance dated 10 January 2009,which referred to the charterparty. Hire invoices were submitted by Elspeth in its own name and acknowledged by the Respondent. Addendum No.3 to the charterparty like earlier Addenda

13

Nos.1 and 2 was entered into between Elspeth and the Respondent in their own names.

46. Following the substitution of the vessel on 29 April 2008, the Respondent as charterers had no further dealings with Faldo either as disponent owners or at all.

47. Unfortunately, there is a mismatch between the parties` respective submissions on this issue. (A parallel issue arose in the separate arbitration regarding the EMPIRE TULANG BAWANG and its Owner Romford Services S.A. and the parties' Submissions on this issue covered both.) Claimant`s original formulation was this (April Submission para.7)

> "7.1 Were the Claimants Elspeth and Romford party to the charterparties over the PAJAJARAN and the TULANG BAWANG? This involves a number of sub-issues:-
>
> > 7.1.1  Who owned the ships?
> >
> > 7.1.2  Did the Owners exercise the option to substitute the named [ship] validly and timeously?
> >
> > 7.1.3  Did the substitution of the named vessel fail to effect a charterparty between the Owners and the Respondents?"

48. This Submission was expanded in paragraphs 16 and following, under the heading "Identity of the Owners under the PAJAJARAN and TULANG BAWANG charterparties". These can be summarised as follows –

> [para.16]
>
> Elspeth and Romford are owners of the vessels, Falda and Starla [Starla Maritime, Falda`s equivalent] are not; there are "ample reasons for concluding either that the contracts were converted by variation or novation into contracts with the actual owners [of the

14

substituted vessels], or that the Respondents are estopped from denying that it is so";

[paras. 17-20]

having abandoned their challenge to the jurisdiction of the arbitrators, the Respondents accepted that they were parties to the arbitration agreements contained in the charterparties. This made it impossible for them to deny that they were parties to the charterparty contracts;

[paras.21-24]

there was a contractual substitution in any event, by reason of Seacrest`s email dated 29 April 2008 and the Respondent`s confirmation of it. The substitution involved both the vessels and their owners who became "owners under the charterparty" so that Elspeth and Romford became "the relevant owner" under the respective charterparties;

[paras.29-31]

Addenda Nos.1 to 3 were agreed by Elspeth/Romford in their own names with the Respondents, so that, if not already parties to the relevant charterparty, "they became the Owners under it. Given the terms of clause 26, such a variation would act as a novation";

[parars.34-36]

the Respondents never suggested during the currency of the charterparties that the Owners [the respective Claimants] were not the parties who were described as such both in the Addenda and in all contractual dealings between the parties", and "this is accordingly a paradigm case of the application of the doctrine of estoppel by convention".

49. Under the heading "The Claimant is not the proper Claimant", the Respondents submitted-

(1) the option given by clause 26 was not properly exercised if, as was alleged in the pleadings, the Claimant (Elspeth/ Romford) had purported to exercise it; the right lay with the original contracting parties, Falda and Starla, alone;

(2) there was no evidence that Seacrest was duly authorised to exercise the option, either on behalf of Elspeth/Romford (as pleaded) nor of Faldo/Starla;

(3) even if valid, the exercise of the option had not had the effect of assigning or novating the charterparty to the Claimant; only "the original Owners" [Falda/Starla] hold contractual rights under the charterparties;

(4) Charterers never consented to "the transfer, assignment or novation of the contractual rights under the charterparties from the original Owners [Falda/Starla] to the Claimants [Elspeth/Romford];

(5) The Parties` subsequent dealings after the substitution of the vessel, including the Addenda signed thereafter, did not effect any kind of novation or variation, nor did they create an estoppel. In any event, Claimants cannot rely on an estoppel "as a sword to endow them with contractual rights they do not have".

[Respondent`s Submissions paras.10-16]

50. In their Closing Submissions dated 19 May 2010 Claimants summarised their case as follows –

"Were the Claimants Elspeth and Romford party to the charterparties over the PAJAJARAN and the TULANG BAWANG?

Elspeth and Romford were party to the charterparties because (i) there was a valid exercise of the option on the charterparties to

16

substitute the named ships and owners; (ii) alternatively there was
a novation of the charterparties so that they took effect as between
the Respondents and Elspeth and Romford; and (iii) alternatively,
there was an estoppel by convention whereby the parties treated the
charterparties as having been made between Elspeth and Romford
on the one hand and the Respondents on the other."

51. The Claimants further contended that the option was exercised by
Seacrest as agent for Falda and Starla, not for Elspeth and Romford as
had been "infelicitously pleaded" in the Points of Reply. In further
support of the estoppel allegation, the Claimants contended that the
Respondents only ceased to deal with Elspeth/Romford "as Owners" after
the charterparties had ended, and when Freezing Orders were made by the
Commercial Court on 17 December 2009.

52. The Respondents' Outline (Closing) Submissions dated 19May 2010
included-

[para.30]

it was "fallacious" to submit that their acceptance of the arbitrators'
jurisdiction "was tantamount to an admission that the named Claimants
are party to the relevant charterparties";

[para.32]

the clause 26 option could only be exercised by Falda/Starla, not by
Elspeth/Romford;

[para.33]

there is no evidence that Seacrest was duly authorised to exercise the
option on behalf of "the original Owners";

[paras.34-36]

there was no novation, amendment or variation of the charterparties
which involved the transfer of the contractual rights from the original
Owners to Elspeth/Romford; and

17

[paras.37-39]

the Claimants cannot rely upon the alleged estoppel "as a sword" and they have failed to identify the necessary factual basis for an estoppel by convention, including an unambiguous and unequivocal common but mistaken assumption, from which it would be unjust or unconscionable to allow the Respondents to depart.

**(2) The claim for hire**

53. Respondents contend –

(1) that Claimants have "simply failed to discharge the burden" of proving their claims for hire, and they rely in particular on the fact that the original claim letter and the Amended Points of Claim do not contain the 'Statement of Truth' required by the CPR (Civil Procedure Rules) in litigation in England and Wales.

(2) that the Claimants waived the right to recover the full amount of hire due under the original charterparty terms, because from April until October 2009 they issued invoices for the reduced amounts only, claiming the full i.e. the original amounts only by invoices issued on and after 14 October 2009.

(3) that the Claimants have not proved that they are entitled to recover interest, under the charterparty terms or at all.

(4) with regard to the Respondent's previous contention that the vessel was off-hire for a period in about October or November 2009, Claimants' April Submission rejected this contention on the ground that the Respondents had not alleged that the alleged arrest of the vessel was one "arising out of Owners' breach or any fault of Owners" as required by Clause 52 of the charterparty, on which the Respondent relied. The contention was not included in the Respondents' April Submission, nor was it referred to by Counsel at the 27 April hearing or in the Respondents' Closing Submission dated 19 May 2010. It appears to the

18

Tribunal that the Respondents have abandoned it and/or no longer rely upon it in relation to this application for an interim/partial Award.

**Evidence**

54. Claimants have provided bulky files of documents containing *inter alia* contemporaneous correspondence between the parties and their agents throughout the period of the charterparty, including hire invoices, reconciliation statements etc. This has come in the form in which it was placed before the Commercial Court in the course of the Commercial Court proceedings, as stated above. Most of it is irrelevant to the claim for an interim/partial Award in respect of unpaid Hire, and the Tribunal has had regard to it only to the extent that it confirms the existence of relevant charterparties and Addenda thereto, delivery and acceptance of the vessels thereunder, and correspondence concerned with the calculation of hire and demands for payment of hire up to 16 November 2009 when Claimants gave notice to terminate the charterparties (paragraph 16 above). The Respondents have not challenged the validity of these documents nor have they disputed the Claimants` calculations of the amounts of hire due, as summarised in the Hire Reconciliation Statement attached to the Amended Points of Claim. The Tribunal accepts the evidence of Eleni Theodosidou in her Witness Statements in connection therewith.

**Findings**

**55.   Conclusions**

   **(1) Substitution**

The Tribunal finds and holds –

(a) the Claimant (Elspeth) was not a party to the charterparty dated 29 January 2008;

(b) initially, Falda were "the Owners" for the purposes of the charterparty;

19

(c) the clause 26 option was given to Falda and could only be exercised by Falda;

(d) clause 26 gave Falda the right to substitute alternatively to offer to substitute both the EMPIRE PAJAJARAN as the vessel and Elspeth as its Owners for the purposes of the charterparty;

(e) the right was exercised by Falda and notified to the Respondents by Seacrest on its behalf by email on 29 April 2009; alternatively, Falda`s offer was accepted by Cass Technova on behalf of the Respondents on 7 May 2008 as aforesaid;

(f) Seacrest had actual alternatively apparent authority to give notice on behalf of Falda of the exercise of the option under clause 26, by reason of Additional Clauses 1 and 2;

(g) Seacrest had implied alternatively apparent authority to notify the Respondents that Elspeth agreed to the substitution of its vessel and of itself as Owner under the charterparty;

(h) Cass Technova had actual alternatively apparent authority to send its email dated 8 May 2008 on behalf of the Respondents. (The existence of such authority has not been denied by the Respondents who are content to assume that it existed : Outline (Closing) Submissions para. 35. This finding is included for the avoidance of doubt.) On its true construction, the email confirmed that the Respondent accepted the substitution of the vessel and of its Owners Elspeth as parties to the charterparty;

(i) from 9 April 2008, therefore, or alternatively from not later than 8 May 2008, there was a contract between Elspeth as Owners and the Respondents as Charterers for the vessel later named EMPIRE PARAJARAN on the same terms as those of the charterparty dated 29 January 2008 between the Respondents and Falda;

(j) alternatively, the subsequent dealings between the Respondents and Elspeth in relation to the vessel (including but not limited to entering into Addendum No.3 to the charterparty dated 9 April 2009 and the course of dealing between them thereafter) both (a) ratified Cass Technova's email confirmation on behalf of the Respondents dated 8 May 2009, and/or (b) made and/or evidenced an implied contract between them whereby the vessel was chartered from Elspeth on the same terms as those of the said charterparty dated 29 January 2008;

(k) further or in the further alternative, the said dealings between the Respondent and Elspeth with regard to the vessel make it inequitable for the Respondents to deny that the vessel was chartered to them by Elspeth (with effect from April/May 2008, or from April 2009) on the terms of the charterparty dated 29 January 2008.and the Respondents are estopped from denying that there was an implied contract to that effect; and

(l) for these reasons, the Claimant is entitled to enforce the contractual terms against the Respondent and in particular to recover hire due to the Owners from the Respondents in accordance therewith.

## (2) The claim for hire

56. The Tribunal is satisfied –

(1) that the vessel was delivered to Respondents by Claimants under the charterparty on 9 January 2009;

(2) that the vessel continued subject to the charterparty at least until 16 November 2009;

(3) that the original rate of hire was US$16,700 daily by virtue of clause 8 and Additional clause 26 of thecharterparty;

21

(4) that the rate of hire was reduced with effect from 19 April 2009 pursuant to Addendum No.3 dated 9 April 2009 upon the terms and conditions stated therein;

(5) that Claimants rendered hire invoices thereafter claiming the reduced rate of hire, until 14 October 2009 when the original rates were claimed;

(6) that Respondents failed to comply with the conditions stated in Addendum No.3 and were in breach thereof prior to 14 October 2009;

(7) that the fact that the Amended Points of Claim do not contain the Statement of Truth required by the Civil Procedure Rules for litigation in England and Wales does not prevent Claimants from proving the facts they rely upon nor the Tribunal from making its findings. The CPR do not apply to the pleadings in the arbitration and the Tribunal has not directed that they should;

(8) that the amount of hire outstanding at at 16 November 2009 calculated at the original charterparty rate was the sum claimed herein by Claimants, namely, US$2,038,888.03;

(9) that the US Prime Rate of interest for the purposes of clause 9(b) of the charterparty has been 3.25% p.a. at all material times, namely, since 16 December 2008. This was alleged by Claimants and not disputed by Respondents; it is a matter of public knowledge of which this LMAA Tribunal can and does take notice, in any event; and

(10) that interest at the rate of 4.25 %p.a. compounded semi-annually on unpaid hire from the due date until the date of payment is appropriate and/or meets the justice of the present case within section 49(3)(a) of the Arbitration Act 1996.

22

**Conclusions**

57. The Tribunal holds –

    (1) that the claim for unpaid hire is independent of and unaffected by issues regarding the termination of the charterparty on or after 16 November 2009;

    (2) that Claimants are entitled to recover unpaid hire from Respondents pursuant to the charterparty and in accordance with the terms thereof;

    (3) that there is no arguable defence to the claim for unpaid hire;

    (4) that Addendum No.3 entitled Claimants on 14 October 2009 to demand payment of hire, future and retrospective, at the original charter rate, by reason of Respondents' breaches of the terms and conditions of the Addendum before that date;

    (5) that Claimants did not waive their right to demand payment of hire, future and retrospective, at the original charter rate on and after 14 October 2009; in particular, their demands for payment at the reduced rate prior to 14 October 2009 did not prevent them from claiming the original rate on and after that date nor estop them from doing so;

    (6) that Claimants are entitled to recover US$2,038,888.03 from Respondents as unpaid hire under the charterparty, recoverable forthwith; and

    (7) that 4.25% p.a. compounded semi-annually is an appropriate rate of interest on the said outstanding hire amount and/or meets the justice of the present case and/or is the agreed rate of interest pursuant to clause 9(b) of the charterparty.

26 October 2010

**<u>Exhibit 4</u>**

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

Linsen International Limited

<u>Claimants</u><br/><u>(Owners)</u>

-and-

Humpuss Sea Transport Pte Ltd

<u>Respondents</u><br/><u>(Charterers)</u>

<u>m.t. Empire Mataram</u>

<u>Charterparty 9th October 2007</u>

---

**FIRST FINAL AWARD**

---

WHEREAS :-

1.   By a charterparty dated 9th October 2007 on an amended SHELLTIME 4 form with additional clauses and later Addenda the Claimants ("Owners") chartered the motor tanker Empire Mataram ("the vessel") to the Respondents ("Charterers") for a period of 60 months plus or minus 15 days in Charterers' option on terms more particularly set out therein.

2.   The said charterparty further provided, by Clauses 46(a) and (b), for any disputes between the parties to be referred to arbitration in London in the manner therein

specified with English law to apply.  Disputes having arisen, further details of which appear below and in the Reasons attached to and forming part of this our First Final Award, the Owners appointed the undersigned Michael Baker-Harber now of 16 Eaton Mews South, London, SW1W 9HP to act as arbitrator and Charterers appointed the undersigned Dr Colin Ong of Suites 2-2 to 2-8, Gadong Properties Centre, KM 3-5, Jalan Gadon, Bandar Seri Begawan BE4119, Negara Brunei Darssalam as arbitrator.  We in turn appointed the undersigned The Right Honourable Sir Anthony Evans of Essex Court Chambers, Lincoln's Inn Fields, London, WC2A 3EG to be the third arbitrator, thus completing the tribunal.  The seat of this arbitration is London, England.

3.      In the reference before us Owners claimed:-

(a) Outstanding hire in the sum of US$1,351,088.12

(b) Expenses totalling US$430,049.48

(c) Damages flowing from Charterers' (alleged) repudiatory breach of contract US$18,187,208.89

(d) Interest and costs

Charterers denied liability and asserted that Owners were themselves in repudiatory breach of the charterparty, which breach they accepted thereby bringing the contract to an end.

4.      Owners made an application for an interim award for hire (see 3(a) above).  Written submissions were served with supporting materials and we heard the parties, both represented by counsel, at an oral hearing on 27th April 2010.

Λ       NOW WE the said Michael Baker-Harber, Colin Ong and The Right Honourable Sir Anthony Evans, having taken upon ourselves the burden of this reference, having

carefully and conscientiously considered the evidence and submissions before us, having conferred with one another and being agreed DO HEREBY MAKE ISSUE AND PUBLISH this our FIRST FINAL AWARD namely:-

B    WE FIND AND HOLD that the Owners' claim for hire SUCCEEDS in the sum of US$1,351,088.12.

C    Accordingly WE AWARD AND ADJUDGE that Charterers shall forthwith PAY to Owners the said sum of US$1,351,088.12 (One Million Three Hundred and Fifty-One Thousand and Eighty-Eight United States Dollars and twelve cents) together with interest calculated at the rate of 4.25 per cent per annum compounded with three monthly rests running from 16th November 2009 until the date payment is made.

D    WE FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs, (to be assessed by us if not agreed, for which purpose we reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment.  Additionally the Charterers shall pay the tribunal's costs of this Award provided always that if the Owners shall in the first instance have paid all or any part of our said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    Our Award is FINAL as to all matters herein determined but we expressly RESERVE unto ourselves jurisdiction to deal with all outstanding matters in the reference.

Dated this 26th day of October 2010

.....................................
**Mr Michael Baker-Haber**
Co-Arbitrator

.....................................
**Dr. Colin Yee Cheng Ong**
Co-Arbitrator

.....................................
**Sir Anthony Evans**
Chairman

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N</u> :-

Linsen International Limited

<u>Claimants</u><br><u>(Owners)</u>

-and-

Humpuss Sea Transport Pte Ltd

<u>Respondents</u><br><u>(Charterers)</u>

<u>m.t. Empire Mataram</u>

<u>Charterparty 9th October 2007</u>

---

**REASONS**

---

**WHEREAS** :-

1. By its First Final Award dated 26 October 2010 the Tribunal consisting of-

Sir Anthony Evans (Chairman)

Michael Baker Harber Esq. (appointed by Claimant)

Dr. Colin Ong (appointed by the Respondent)

1

has Ordered (in summary) that Owners` claim for hire succeeds in the sum of US$1,351,088.12 together with interest at 4.25% p.a. as stated therein and Costs.

2. The Tribunal now gives its Reasons for the said Award, as follows.

**Parties**

3. Claimants (Linsen International Limited, hereinafter ("Claimants" or "Linsen") are and at all material times have been Owners of the vessel EMPIRE MATARAM (hereinafter "the vessel") a tanker of 17000 mt DWT constructed by Samho Shipbuilding Co.Ltd. of South Korea as Hull No. SH1097.

4. Respondents (Humpuss Sea Transport Pte., hereinafter "Respondent" or "Respondents" or "Humpuss") chartered the vessel from Linsen as a new building by a time charterparty dated Singapore 9 October 2007.

**The charterparty**

5. The charterparty was on Shelltime 4 form and was for a period of five years (plus or minus 15 days) from delivery.

6. By clause 46, the charterparty was governed by English law and disputes were agreed to be referred to arbitration in London in accordance with the Arbitration Act 1996 save as stated therein.

7. By clause 8 of the charterparty, the rate of hire was US$16,800 per day and *pro rata* for any part of a day.

8. Clause 9 of the charterparty ("Payment of Hire") provided in part that "in default of .....proper and timely payment:

    (a).........

    (b) interest on any amount due but not paid on the due date shall accrue from the day after that date up to and including the date when payment is made, at a rate per annum which shall be 1% above the U.S.Prime Interest Rate as published by the Chase Manhatten Bank in New York at 12.00 New York Time on the due

2

date, or, if no such interest rate is published on that day, the interest rate published on the next preceding day (sic) on which such a rate was so published, computed on the basis of a 360 day year of twelve 30-day months, compounded semi-annually."

9. On 9 April 2009 (after the vessel was delivered and after disputes had arisen regarding non-payment and late payment of hire) Addendum No.4 to the charterparty was agreed, including the following –

"(1) It is a condition of this charter that all hire shall be paid in time

(2) It is a condition of clause (3) below that all outstanding monies owed under this Charter Party, which have been withheld by charterers to be immediately paid otherwise this Addendum is null and void

(3) A new temporary daily rate of hire, as per Clause No.8 of the Charterparty will be US Dollars 15,300 daily. This rate will become effective from the 19th of April, 2009, which is the monthly anniversary date of payment of Charter-Hire. This allowance to Charterers shall continue up to and including the 31st of December 2009, per day/pro rata.

Thereafter, the accumulated difference of Charter Hire from the original rate of USD 16,800 to the temporary rate of USD 15,300 i.e. $1,500 daily shall be repaid to Owners by increasing the original Charter-Hire rate over the remaining period left to run under the timecharter by the appropriate amount.

..........................

(This will mean........Actual exact figures to be calculated. Adjustments if any to be settled with the last Charter-Hire payment(s) at the end of the T/C period.

(4) If Charterers fail to make proper and punctual payments at the new agreed rate, then owners shall have the right to claim extra damages from the Charterers on the following basis:-

The adjusted Charter-Hire rate, as per this addendum shall become null and void, with immediate effect.

Upon this event the rate of Charter-Hire shall be retrospectively adjusted and payable at the original rate of USD 16,800 daily from the day/time the rate was reduced. This original rate shall continue until Charterers default is rectified. This original rate shall be the appropriate measure and assessment of damages due to the Owners.

…………………………………………..

All other terms and conditions and exceptions of above Charter Party, to remain unaltered."

**Performance**

10. The vessel was delivered under the charterparty on 20 February 2009.

11. Respondents failed to pay hire pursuant to clause 8 and their obligation was amended by Addendum No.4 as aforesaid, with effect from 19 April 2009.

12. Respondents thereafter failed to pay either (1) the amount of hire outstanding at the date of Addendum No. 4, namely, 9 April 2009, or (2) the agreed reduced rate of hire pursuant to the said Addendum, either as agreed in the Addendum or at all.

**The arbitration**

13. On 6 August 2009 the managers of the North of England P&I Association Ltd. on behalf of Linsen gave notice of arbitration "in respect of all disputes arising under the charterparty". Thereafter, Mr.Baker Harber was appointed arbitrator by Claimants and Dr. Colin Ong was appointed arbitrator by Respondents.

4

14. By letter dated 12 November 2009, the P&I Association set out Claim Submissions "in connection with Owners` claim for unpaid hire under the Charterparty". The amount of hire claimed at the original charter rate was US$1,406,341.45 plus interest pursuant to clause 9(b) of the Charterparty, alternatively under section 49 of the Arbitration Act 1996.

15. The said letter also claimed sums allegedly due in respect of Charterers` expenses under clause 7 of the Charterparty, plus interest thereon.

**Termination of the charterparty**

16. On 16 November 2009 the said P&I manager on behalf of Linsen informed the Respondents that-

> "Owners hold Charterers in repudiatory breach of the Charterparty arising by way of Charters` cumulative behaviour in failing to comply with their Charterparty obligations including but not limited to:
>
> > 1. Failing to pay hire;
> >
> > 2. Failing to arrange for or to pay for vital voyage expenses.
>
> ......................Owners hereby accept Charterers conduct as being in repudiatory breach thereby terminating the Charterparty forthwith and with immediate effect."

**The arbitration (contd.)**

16. By letter dated 22 January 2010, Asia Legal LLC on behalf of the Respondents set out Defence Submissions which included –

> (para.5) an admission that the vessel was physically delivered to the Respondents on 19 February 2009 at 2300 hours UTC;
>
> (para.6) a denial that the Claimants were "entitled to the sums claimed or any sums whatsoever from the Respondents", and of the claim for interest;

5

(para.7(a)) an allegation that by reason of Addendum No.4 the charter hire was reduced "and accordingly, the amount of hire claimed.....is incorrect";

(para.7(b) and (c)) a denial that the Respondent was in repudiatory breach of the charterparty, and an allegation that the respondents "have accepted or alternatively by these submissions accept" the Claimant's notice [dated 12 November 2009] as itself being a repudiatory breach; and

(para. 7(d)) an allegation that the vessel was off-hire under clause 52 of the charterparty "for the period in or about October or November 2009".

17. On 30 January 2010 the Tribunal was completed by the appointment of Sir Anthony Evans as chairman.

**Commercial Court Proceedings**

18. Meanwhile, the Claimants (and others) obtained injunctive relief in the Commercial Court against the Respondents (and another) on 17 December 2009 (ex parte Order made by Gross J.). This was upheld by Christopher Clarke J. on 19 February 2010 after *inter partes* hearings.

19. The Commercial Court proceedings are not relevant to these Reasons save  as part of the narrative history of the dispute, and save that documentary evidence placed before the Commercial Court was produced before the Tribunal, as stated below.

**The Arbitration (contd.)**

20. A hearing took place before the Tribunal on 26 February 2010. Counsel for the Respondents confirmed that a previous allegation that the charterparties were void had been withdrawn. The Tribunal's Order for Directions (No.1) made after the hearing therefore recorded that –

"(b) the Respondent sought leave to amend the Defence Submissions specifically in order to (1) withdraw paragraphs 2 and

6

3 and 5 and 6 of the respective Submissions [in the four different arbitrations] dated 22 January 2010, which allege that the charterparties and void and/or unenforceable by reason of unlawfulness, illegality, fraud and/or collusion, ....".

21. In order to clarify the issues raised in the arbitration, the Tribunal directed the parties to serve amended pleadings by dates which were agreed and/or stated orally at the hearing.

22. The Tribunal further directed the Claimants' Application for an interim/partial Award in respect of the claim for hire would be heard on 27th. April 2010.

23. Pursuant to the Directions given, Claimants served Amended Points of Claim dated 8 March 2010 and Respondents served Amended Points of Defence dated 24 March 2010. Claimants served Points of Reply dated 31 March 2010.

24. The Amended Points of Claim included a claim for "Unpaid hire from 20th February 2009 to 16th November 2009 US$1,351,088.12" plus interest "pursuant to clause 9(b) of the Charterparty" amounting to US$51,843.09 as at 8 March 2010" and continuing. There were also claims for Charterers' expenses (paragraph 13.2) and for damages caused by Respondents' alleged repudiation of the charter (paragraphs 18-19).

25. The Amended Points of Defence admitted that the sums claimed had not been paid (para.7) and denied that any sum was due to the Claimants (para. 11). The correctness of Claimants' Hire Reconciliation Statement was "not admitted" (para.10). The off-hire allegation was maintained but not particularised (para. 10(d)). Addendum No.4 was referred to (para.4) but no defence was based upon it.

26. The Amended Points of Defence contained no challenge to the jurisdiction of the Tribunal nor any allegation that the charterparty was void on any ground.

27. A further hearing was held as directed on 27 April 2010. The parties served written Submissions dated 27 April 2010 (Claimants) and 26 April 2010 (Respondents) respectively ("the April Submissions") but as the dates indicate there was no opportunity for the Tribunal or the parties to consider these in advance of the hearing. The Claimants produced a substantial amount of documentary evidence including Affidavits sworn on their behalf in the Commercial Court proceedings (paragraph 18 above) by Marianne Brookes dated 17 December 2009 and 11 January 2010, including Exhibit "MB1" to the First Affidavit which amounted to 1349 pages contained in four separate bundles. The Respondents did not object to the Tribunal receiving these documents as evidence in the arbitration, although the Tribunal has found that almost all of them are irrelevant to this Application for an interim/partial Award.

28 The Claimants also produced a Witness Statement of Eleni Theodosiadou dated 26 April 2010. She had prepared the Hire Reconciliation Statements dated 8 March 2010 that were attached to the Amended Points of Claim (paragraph 2). The Witness Statement was otherwise concerned with the claim for disbursements which is no longer relevant for the purposes of this interim/partial Award (see below).

29. At the 27 April hearing, counsel made oral submissions but it was agreed, and directed by the Tribunal, that in the circumstances (including late delivery of written submissions and evidence, as stated above) the parties should each submit written Closing Submissions by 19 May 2010 together with Applications, if any, to adduce further evidence, by the same date.

30. On 19 May 2010 the parties each served Closing Submissions pursuant to the Directions given as above. They also covered the claims in respect of disbursements (charterers' expenses) notwithstanding that the Tribunal directed on 26 February 2010 that the applications for

8

interim/partial Awards were limited to their claims for unpaid Hire.
However, it appeared that, due to oversight, the Directions given at the 26
February hearing were not confirmed to the parties in writing until after
the 27 April hearing. When the Claimants received them; they accepted
that the pending Applications were so limited (Supplemental Submissions
dated 28 May 2010). Therefore, issues relating to disbursements
(charterers` expenses) are no longer relevant to this First Final Award.

32. In the Respondents` Outline Submissions dated 19 May 2010 it was
contended for the first time that "The Amended Points of Claim include
no statement of truth with regard to the facts therein and the Claimants
have served *no* evidence in support of their claims for hire" (paragraph
9).

32. On 19 May 2010 the Respondent`s legal representatives applied for
permission to adduce in evidence a Witness Statement of Gho Sze Kee
of that date. It is concerned with the claim for disbursements, and in view
of the Claimants' later concession that this application is limited to the
claim for unpaid Hire, it is not relevant to this First Final Award.

**Issues**

33. Respondents contend –

(1) that Claimants have "simply failed to discharge the burden" of
proving their claims for hire, and they rely in particular on the fact that
the original claim letter and the Amended Points of Claim do not contain
the 'Statement of Truth' required by the CPR (Civil Procedure Rules) in
litigation in England and Wales.

(2) that the Claimants waived the right to recover the full amount of hire
due under the original charterparty terms, because from April until
October 2009 they issued invoices for the reduced amounts only,
claiming the full i.e. the original amounts only by invoices issued on and
after 14 October 2009.

9

(3) that the Claimants have not proved that they are entitled to recover interest, under the charterparty terms or at all.

(4) with regard to the Respondent's previous contention that the vessel was off-hire for a period in about October or November 2009, Claimant' April Submission rejected this contention on the ground that the Respondents had not alleged that the alleged arrest of the vessel was one "arising out of Owners' breach or any fault of Owners" as required by Clause 52 of the charterparty, on which the Respondent relied. The contention was not included in the Respondents' April Submission, nor was it referred to by Counsel at the 27 April hearing or in the Respondents' Closing Submission dated 19 May 2010. It appears to the Tribunal that the Respondents have abandoned it and/or no longer rely upon it in relation to this application for an interim/partial Award.

**Evidence**

34. Claimants have provided bulky files of documents containing *inter alia* contemporaneous correspondence between the parties and their agents throughout the period of the charterparty, including hire invoices, reconciliation statements etc. This has come in the form in which it was placed before the Commercial Court in the course of the Commercial Court proceedings, as stated above. Most of it is irrelevant to the claim for an interim/partial Award in respect of unpaid Hire, and the Tribunal has had regard to it only to the extent that it confirms the existence of relevant charterparties and Addenda thereto, delivery and acceptance of the vessels thereunder, and correspondence concerned with the calculation of hire and demands for payment of hire up to 16 November 2009 when Claimants gave notice to terminate the charterparties (paragraph 16 above). The Respondents have not challenged the validity of these documents nor have they disputed the Claimants' calculations of the amounts of hire due, as summarised in the Hire Reconciliation

10

Statement attached to the Amended Points of Claim. The Tribunal accepts the evidence of Eleni Theodosidou in her Witness Statements in connection therewith.

**Findings**

35. The Tribunal is satisfied –

(1) that the vessel was delivered to the Respondents under the charterparty on 19 February 2009;

(2) that the vessel continued subject to the charterparty at least until 16 November 2009;

(3) that the original rate of hire was US$16,800 as stated in the charterparty;

(4) that the rate of hire was reduced with effect from 19 April 2009 pursuant to Addendum No.4 dated 9 April 2009 upon the terms and conditions stated therein;

(5) that the Claimants rendered hire invoices thereafter claiming the reduced rate of hire, until 14 October 2009 when the original rates were claimed;

(6) that the Respondents failed to comply with the conditions stated in Addendum No.4 and were in breach thereof prior to 14 October 2009;

(7) that the fact that the Amended Points of Claim do not contain the Statement of Truth required by the Civil Procedure Rules for litigation in England and Wales does not prevent the Claimants from proving the facts they rely upon nor the Tribunal from making its findings. The CPR do not apply to the pleadings in the arbitration, and the Tribunal has not directed that they should;

(8) that the amount of hire outstanding at 16 November 2009 calculated at the original charterparty rate was the sum claimed herein by the Claimants, namely, US$1,351,088.12;

11

(9) that the US Prime Rate of interest for the purposes of clause 9(b) of the charterparty has been 3.25% p.a. at all material times, namely, since 16 December 2008. This was alleged by the Claimants and not disputed by the Respondents; it is a matter of public knowledge of which this LMAA Tribunal can and does take notice, in any event; and

(10) that interest at the rate of 4.25% p.a. compounded semi-annually on unpaid hire from the due date until the date of payment is appropriate and/or meets the justice of the present case within section 49(3)(a) of the Arbitration Act 1996.

**Conclusions**

36. The Tribunal holds –

(1) That the claim for unpaid hire is independent of and unaffected by issues regarding the termination of the charterparty on or after 16 November 2009;

(2) That there is no arguable defence to the claim for unpaid hire;

(3) that Addendum No. 4 entitled the Claimants on 14 October 2009 to demand payment of hire, future and retrospective, at the original charter rate, by reason of the Respondents' breaches of the terms and conditions of the Addendum before that date;

(4) Claimants did not waive their right to demand payment of hire, future and retrospective at the original charter rate on and after 14 October 2009; in particular, their demands for payment at the reduced rate prior to 14 October 2009 did not prevent them from claiming the original rate on and after that date nor estop them from doing so;

(5) that the Claimants are entitled to recover US$1,351,088.12 from the Respondents as unpaid hire under the charterparty, recoverable forthwith; and

(6) that 4.25% p.a. compounded semi-annually is an appropriate rate
of interest on the said outstanding hire amount and/or meets the
justice of the present case and/or is the agreed rate of interest
pursuant to clause 9(b) of the charterparty.

26 October 2010